In the Matter of Stephen Page ROBERTS and Evelyn Kay Roberts, d/b/a Pet Life By Roberts, Debtors.

Thomas L. WILLIAMS, trustee in bankruptcy, Plaintiff,

v.

H.W. SHAW, Ken Richmond and Terry P. Malloy, Defendants.

Bankruptcy No. 87–00634–SW–7–DJS. Adv. No. 87–0383–SW.

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

March 21, 1988.

Thomas L. Williams, Roberts, Fleischaker & Williams, Joplin, Mo., for plaintiff.

Terry P. Malloy, Malloy & Elder, Tulsa, Ok., for defendants.

Jerry E. Wells, Joplin, Mo., for debtors.

## ORDER TRANSFERRING THE WITHIN ADVERSARY ACTION TO THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

DENNIS J. STEWART, Chief Judge.

This is an action brought by the plaintiff trustee in bankruptcy to avoid a transfer of certain personal property of the debtors within the year next preceding bankruptcy under § 548(a)(2) of the Bankruptcy Code.[1] The defendants have moved to transfer this action to the United States Bankruptcy Court for the Northern District of Oklahoma under the provisions of § 1412, Title 28, United States Code, for the convenience of the parties and in the interest of justice.[2] The plaintiff trustee has continually opposed the motion to transfer.

In responding to the court's invitation to develop the factual issues which would be determinative of the motion to transfer this case to the United States Bankruptcy Court for the Northern District of Oklahoma, the movants presented the affidavits and proposed conclusions of law which the court had requested and which tended to show that most of the witnesses who would testify on the issues joined by the pleadings were located in and around the Northern District of Oklahoma.[3] The general considerations which were adverted to by the plaintiff were not sufficient to controvert the movants' demonstration that the "center of gravity" of the necessary parties and witnesses would be in the Northern District of Oklahoma.[4]

1. In the within complaint, the trustee avers that jurisdiction is proper under "11 U.S.C.A. sections 548 and 550 and 28 U.S.C.A. sections 1334 and 157" and further states: "Within one year before the filing of the petition in this case, the debtor transferred to the defendants the aforementioned business and assets known as Pet Life by Roberts ... The debtor received less than a reasonably equivalent value in exchange for such transfer; and the debtor was insolvent on the date such transfer was made, or became insolvent as a result of such transfer." These allegations place the claim squarely within the ambit of section 548(a)(2) of the Bankruptcy Code.

2. "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Section 1412, Title 28, United States Code. In a "core" proceeding, such as one brought under section 548(a)(2) of the Bankruptcy Code, the bankruptcy court has the power to order the transfer. See, e.g., In re Thomasson, 60 B.R. 629, 631 (Bkrtcy.M.D.Tenn.1986) ("A motion to change venue of a bankruptcy case is a 'matter concerning the administration of the estate' defined by BAFJA to be a 'core' proceeding.")

3. The files and records in this action show that, on January 13, 1988, the court issued its written order directing the parties to confer and attempt to settle the issue of transfer and, if they failed to settle it, to submit proposed conclusions of law and affidavits of fact on the issues to be determined by the court on or before February 11, 1988. On February 12, 1988, the defendants filed affidavits which purported to show that not only the defendants were located in the Northern District of Oklahoma, but also eight of the eight witnesses which they would call to testify on the substantive issues were also from Oklahoma. It was further averred that "the Contract for Sale upon which ... Complaint is founded, was entered into and executed by the parties in Tulsa, Oklahoma, and the assets and business intended to be transferred thereby are located in the City of Tulsa, within the Northern District of Oklahoma." The trustee filed a brief and general statement of issues on the substantive portion of the case on February 16, 1988, but never deigned to comply with the court's order of January 13, 1988, requesting affidavits and proposed conclusions of law on the transfer issue.

4. "Factors that should be considered in deciding whether to transfer a case are the convenience of the witnesses, the parties' access to proof, the ability to receive a fair trial and judicial efficiency." Thomasson v. Amsouth Bank, N.A., 59 B.R. 997, 1000 (N.D.Ala.1986). According to the

In attempting to balance the factors which are to be considered in determining whether there should be a change of venue for the convenience of the parties and in the interest of justice, however, the court was compelled to give considerable weight to the fact that a trustee in bankruptcy cannot be expected to have the wherewithal to travel to another district to prosecute an action to collect property of an estate. It may constitute an even more unjustifiable incursion into the funds of an estate (assuming that some estate assets exist, which may not be the case at bar) for the trustee to hire counsel in another district to prosecute the action for recovery of assets in that district.

Therefore, to ensure that there may be some merit in the action before making the potentially decisive decision to transfer or not to transfer, the court issued its order on February 26, 1988, directing the plaintiff to show cause why his complaint should not be dismissed as attempting to recover property which was wholly encumbered by federal tax liens. In that order, the following pertinent considerations were stated:

"In their answer to the complaint, the defendants have contended that the property in question is subject to tax liens in excess of $80,000—including both federal and state tax liens—and a $52,000 mortgage, which the debtors claim that they had reduced to $22,000 by agreement with the mortgage prior to the transfer.

"If these averments of the defendants are true and correct, the value of the property sought to be recovered by the trustee—alleged by him to be some $87,000—would appear to be overencumbered by a combination of the tax liens and the balance due on the mortgage. The trustee has contended that the tax liens cannot be regarded as perfected with respect to personal property until the personal property is actually physically seized. But the law appears to be

otherwise and to the effect that only a proper filing is necessary for perfection. See section 6323, Title 26, United States Code, subsection (f)(ii), providing for perfection of a tax lien as to personal property by filing 'in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated.' 'It is for Congress, and not the Courts, to determine priorities in both taxation and Bankruptcy. Since Congress has decided that income shall be taxable, and that a properly obtained lien for taxes shall have first priority in Bankruptcy, it is their decision and not ours that the United States shall take all and the other claimants nothing.' *United States v. Rochelle*, 384 F.2d 748, 752, n. 5 (5th Cir. 1967). Further, it does not appear that the rule of *United States v. Whiting Pools, Inc.* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), to the effect that a reorganization court can order the I.R.S. to turn over to the reorganization debtor property which is subject to a tax lien would have any applicability in a straight liquidation case. If the property were recaptured by the trustee, it would simply be turned over to the I.R.S. after an exaction of fees under section 326 of the Bankruptcy Code which would likely make it more expensive for the taxpayer. '[T]he court should decline to permit the trustee in bankruptcy to recover such a minimal amount that it could only be used to pay attorney's fees for the trustee.' *Matter of Melvin*, 64 B.R. 104, 107 (Bkrtcy.W.D.Mo.1986)."

In response to that order, the plaintiff trustee in bankruptcy has presented a written statement of counsel for the debtors to the effect that office of the Internal Revenue Service has acknowledged to him that they do not have any perfected lien on the property in question.[5] The trustee states

uncontradicted affidavits adduced by the movants, see note 3, *supra,* and the other considerations stated in the text of this memorandum, the evidence unequivocally supports transfer to the

Northern District of Oklahoma on each of those factors.

**5.** The affidavit of attorney for the debtors, dated March 9, 1988, states that he "has conversed

that it is therefore his factual contention that the Internal Revenue Service liens are not in fact perfected in the manner required by the governing statutes [6], as the defendants have averred.[7] In a separate response, the Internal Revenue Service contends that its liens are in fact perfected, but that it desires to have the trustee bring the property into the estate, apparently so that it or its proceeds can then be paid over to the Internal Revenue Service.[8]

Because a material issue in this action will apparently be the factual issue of whether the liens of the Internal Revenue Service have been properly perfected, it appears that this must tip the otherwise nearly even balance in favor of transferring this action to the Northern District of Oklahoma, where the facts concerning the filing of the notices of the liens can more readily be ascertained.[9] If if develops that the liens of the Internal Revenue Service are in fact perfected, then it appears that the interests of the trustee and the Internal Revenue Service are identical, or nearly so, and that the Internal Revenue Service may supply the trustee with almost all the assistance which would be necessary to prosecute the action in the United States Bankruptcy Court for the Northern District of Oklahoma. This court assumes that it is unlikely that it will develop that the liens of the Internal Revenue Service are not perfected, for the plaintiff trustee in bankruptcy, in response to the court's show cause order, has not asserted that the liens are in fact unperfected, but only that he has not been shown *evidence* that they are [10], and he does not appear to believe the issue to be of sufficient moment to cause him to conduct discovery on it. It is therefore, accordingly,

ORDERED that the within adversary proceeding be, and it is hereby, transferred to the United States Bankruptcy Court for the Northern District of Oklahoma pursuant to § 1412, Title 28, United States Code.

with the Internal Revenue Service and with the United States Attorney's office, both of whom concur with the attorney for the Debtors that the Internal Revenue Service is not in a position to have a perfected lien as to the property in question before this Honorable Court and a standing to raise that issue." But cf. note 8, *infra.*

6. The trustee states that: "while it is true the Internal Revenue Service could perfect by compliance with 26 U.S.C. section 621 and 623(f)(1)(ii), there is no evidence that the Internal Revenue Service *did* perfect under the applicable provisions. The trustee recollects no affidavits from the defendants that the IRS perfected and the affidavit of the debtors' attorney.... indicates that the debtors never received notice of the filing of such a tax lien. Thus, while the Court's reasoning is not questioned, the factual basis for the reason is simply not present."

7. In numerous papers filed with the court, the defendants contend that the tax liens are perfected. And cf. note 8, *infra.*

8. In a written statement which it filed with the court on March 17, 1988, the Internal Revenue Service states that it "holds valid and perfected tax liens on the property of the debtors, including the business property which is the subject of the within adversary action" and that "Litigation of the issues raised by the pleadings in this adversary action is necessary because the respective rights of the parties to the business property must be determined. The interests of the debtors and various creditors, including the United States, will be affected by the pending adversary action and will be left unresolved if the action is dismissed."

9. If the requisite filings have in fact been made, it appears that the location of those filings will be in Oklahoma.

10. See note 6, *supra.*